UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| APRIL L. GARTIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cv-01642-TWP-MJD |
| | ) | |
| INDIANA UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON DEFENDANT'S MOTION TO DISMISS**

This matter is before the Court on a Motion to Dismiss filed pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1) by Defendant Indiana University ("IU") (Filing No. 15).[1] Plaintiff April L. Gartin ("Gartin") initiated this action against IU for its alleged violations under the Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and the Age Discrimination in Employment Act ("ADEA") (Filing No. 1 at 7). In particular, Gartin alleges as an African American woman with a disability and over age 40, she was subjected to discrimination and retaliation because of her disability, race and age while employed at IU. In response, IU filed its Motion to Dismiss, asking the Court to dismiss all claims against it. For the following reasons, the Court **grants in part and denies in part** the Motion to Dismiss (Filing No. 15).

---

[1] IU points out that "Gartin incorrectly names Indiana University as the defendant in this case. The Trustees of Indiana University is the proper legal entity." (Filing No. 15 at 1 n.1; Filing No. 16 at 1 n.1; Filing No. 20 at 1 n.1 (all citing Ind. Code § 21-27-4-2). IU has not moved for the Court or Gartin to correct the name of the Defendant, and instead chooses merely to proceed and refer to itself as "defendant The Trustees of Indiana University." (*See* Filing No. 15 at 1; Filing No. 16 at 1; Filing No. 20 at 1.) In any event, the Court will refer to the Defendant as "IU".

## I.    BACKGROUND

The following facts are not necessarily objectively true, but as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of Freeman as the non-moving party.  *See Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

Gartin, an African American woman born in 1969, started working for IU's University Information Technology Services ("UITS") as a System Analyst in 2003 ([Filing No. 1 at 2](), 4). After a job change to Associate Business Analyst, and working at UITS for twelve years, Gartin was required to work remotely from home beginning in 2015 because of her lupus and connective tissue disease. *Id.* at 4.  During this time, she was "subjected to terms and conditions that were not required of other employees," and, as early as December 1, 2017, she was subjected to discrimination and retaliation due to her disability, her race, and her age. *Id.*  At that time, Gartin's workload increased substantially after two employees left the department (leaving her as the only employee there), and her supervisor Todd Neal ("Neal") asked her to return to working in the office.  *Id.* at 5.  The next month, in January 2018, Neal placed Gartin on a Performance Improvement Plan.  *Id.*  Gartin's requests for accommodations—like changes to her schedule and not setting meetings outside of her work hours—were rebuffed, and she was required to turn work summaries while other employees were not.  *Id.* Despite her complaints to management, the heavy workload continued.  *Id.*

A few months later, in May 2018, Neal told Gartin to set her training on the "back burner" so she could focus on her workload.  *Id.*  As a result, her skillset diminished.  *Id.* After complaining of this fact, Gartin received more work demands that were "subjective" and outside of her job description.  *Id.*  The next month, June 2018, Gartin was passed over for a cost of living pay

increase, a raise that was "up to her supervisor's discretion." *Id.* Despite Gartin filing several grievances based on this work environment, IU did not follow its standard grievance process. *Id.* at 6. As a result of these conditions, Gartin's medical conditions worsened, and she took an extended medical leave. *Id.*

The next year, at the end of October 2019, Gartin filed a Complaint of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). *Id.* In mid-December 2019, IU sent officers of its police department to Gartin's home to retrieve her work equipment, even though Gartin had informed IU that she would return the equipment following her holiday vacation. *Id.* The next spring, in mid-March 2020, the EEOC issued a Dismissal and Notice of Rights for Gartin's earlier-filed EEOC Charge. *Id.* On June 16, 2020, Gartin sued IU in this Court for claims under the ADA, Title VII, and the ADEA. *Id.* at 7. On August 24, 2020, IU timely moved to dismiss all the claims against it (Filing No. 15).

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski*, 550 F.3d at 633. However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual

allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("it is not enough to give a threadbare recitation of the elements of a claim without factual support"). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### III.   DISCUSSION

Gartin's makes three claims of discrimination and retaliation in her Complaint: under the ADA, under the ADEA, and under Title VII. The Court will first address the contentions as they relate to the ADA and ADEA, then turn to Title VII, and conclude with Gartin's request for injunctive relief.

### A.   ADA and ADEA

IU argues that it "has sovereign immunity with regard to any claims brought under either" the ADA or the ADEA since "it is well established that the University 'is an instrumentality of the state such that it is entitled to assert Eleventh Amendment immunity.'" (Filing No. 16 at 6, 7 (quoting *Shannon v. Bepko*, 684 F. Supp. 1465, 1473 (S.D. Ind. 1988)).) In response, Gartin argues that "[a] state or local government entity that receives federal funding for whatever purpose, cannot claim sovereign immunity if they are sued in federal court for discrimination." (Filing No. 18 at 10 (citing 42 U.S.C. § 2000d-7)). Moreover, "it is a question of fact as to whether under 42 U.S.C.

2000d, Indiana University is subject to 'the provisions of any other federal statute prohibiting discrimination by recipients of federal financial assistance', and therefore not protected under sovereign immunity." *Id.* at 11.  In reply, IU argues that "Gartin is mistaken." (Filing No. 20 at 3.) First, "the U.S. Supreme Court has determined that the ADEA did not validly abrogate states' Eleventh Amendment immunity from suit by private individuals." *Id.* (citing *Kimel v. Florida Bd. of Regents*, 528 U.S. 62 (2000); *Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 537, (2002)). And "[i]t appears that every court to have considered Gartin's argument regarding 42 U.S.C. § 2000d-7"—that is, that IU loses sovereign immunity because it receives federal funds—"has rejected it." *Id.* at 3-4 (citing *Fikse v. Iowa Third Judicial Dist. Dep't of Corr. Servs.*, 633 F. Supp. 2d 682, 689 (N.D. Iowa 2009) (noting that "every court to consider the question has held that § 2000d–7(a)(1) does not create a waiver of Eleventh Amendment immunity to ADEA claims based on a state agency's acceptance of federal funds").  Finally, "[t]he same is true of any ADA claim Gartin seeks to pursue," IU contends, because "like the ADEA, the ADA is not targeted at recipients of federal funding." *Id.* at 4 (citing 42 U.S.C. §§ 12112(a), 12111(2)).

Gartin's claims against IU under the ADA and the ADEA are barred by sovereign immunity.  First, as this Court recently held in a similar case, a plaintiff's "claims against Indiana University fail because Indiana University has not waived immunity to [her] claims under the ADA.  Indiana University is an instrumentality of the State of Indiana for purposes of the Eleventh Amendment and thus has sovereign immunity with regards to any claims brought under the ADA." *Holliday v. Trustees of Indiana Univ.*, 2018 WL 3022657, at *3 (S.D. Ind. June 18, 2018).  The same is true here of Gartin's ADA allegation, regardless of the relief she seeks:  IU—again as an instrumentality of the State of Indiana—has not waived sovereign immunity, and so the claim fails. *See Kroll v. Bd. of Trustees of Univ. of Ill.*, 934 F.2d 904, 907 (7th Cir. 1991) ("A state may claim

immunity from suit in federal court and must be dismissed from the litigation unless" the state has consented to suit or its immunity has otherwise been abrogated by the United States Congress.); *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 58 (1996) ("[W]e have often made it clear that the relief sought by a plaintiff suing a State is irrelevant to the question whether the suit is barred by the Eleventh Amendment.").

Gartin's ADEA claim suffers the same fate. Again, this Court recently noted that defendants' sovereign immunity arguments were "well-taken" when they contended that "ADEA claims against state agencies are barred by the Eleventh Amendment." *Wade v. Indiana Univ. Sch. of Med.*, 2019 WL 3067519, at *7 (S.D. Ind. July 12, 2019), *reconsideration denied*, 2019 WL 4467210 (S.D. Ind. Sept. 17, 2019), *aff'd sub nom. Wade v. Trustees of Indiana Univ.*, 804 Fed. Appx. 410, 2020 WL 2317702 (7th Cir. 2020). Because IU is an "instrumentality," "arm," or "alter ego" of the State of Indiana for purposes of the Eleventh Amendment, (*see Shannon*, 684 F. Supp. at 1473), Gartin's ADEA claim too must fail, also regardless of the relief sought. *See Peirick v. Ind. Univ.-Purdue Univ. Indpls. Athletics Dept.*, 510 F.3d 681, 694, 696 (7th Cir. 2007) (holding "that the Eleventh Amendment shields [the Trustees of Indiana University] from suit under the ADEA" and that a plaintiff "may not proceed against the Board even on her claims for prospective injunctive relief"); *Gore v. Indiana Univ.*, 416 F.3d 590, 591, 2005 WL 1713419 (7th Cir. 2005)

("The district court dismissed Gore's age discrimination claim on sovereign immunity grounds. Gore does not appeal this ruling and rightly so.").

For the preceding reasons, the Court **grants** IU's motion as it relates to Gartin's ADA and ADEA claims. These claims are dismissed with prejudice because no amount of revision could cure them when sovereign immunity categorically bars their application against IU.

**B.    Title VII**

IU argues that "Gartin's entire Complaint should be dismissed for its failure to satisfy the notice pleading rules." (Filing No. 16 at 4.) Simply put, IU argues the Complaint "does not provide a coherent story to support any of Gartin's claimed entitlements to relief." *Id.* at 4-5. Specifically, IU contends that Gartin "makes no effort to notify the University of which allegation supports which claimed entitlement to relief":

> When Gartin alleges that she had a heavy workload, she does not allege whether the University gave her work because of her race, her age, her illness, or some combination of the three. Similarly, Gartin alleges that she did not receive a cost of living raise in June 2018, but provides no notice as to whether she believes this was withheld on the basis of her race, her age, her illness, or some combination— indeed, she does not even allege she was entitled to a cost of living raise. This same general defect impacts nearly every allegation Gartin asserts.

*Id.* at 6 (citations omitted). These "failures of notice do not give the University or the Court a sufficiently intelligible account 'to understand whether a valid claim is alleged and if so what it is.'" *Id.* (quoting *Vicom, Inc. v. Harbridge Merch. Servs.*, Inc., 20 F.3d 771, 775 (7th Cir. 1994)). Moreover, Gartin's race- and age-discrimination claims fail because she "does not allege operative facts plausibly suggesting that employees of different races [or ages] were treated better." *Id.* at 9 (citations omitted). Indeed, because she alleges "that, during the relevant timeframe, she was the only employee working" at UITS, it is "impossible that Gartin was treated worse based on her race

or her age because there would be no other similarly situated employees against whom to compare her." *Id.*

In response, Gartin argues that IU imposes "an unfair standard" by asking that she "prove her case early based on the initial pleading at the beginning stage of litigation." (Filing No. 18 at 4.)  As for her discrimination claims, Gartin notes that the Seventh Circuit has instructed "that a plaintiff alleging employment discrimination on the basis of race, sex or some other factor . . . may allege the defendant's intent quite generally: 'I was turned down for a job because of my race' is all a complaint has to say," for example. *Id.* (quoting *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998)).  Here, Gartin argues, the Complaint described "her employer's location, her department, position and subsequent title, dates of employment, supervisor's name, allegations of increased work load and job duties, previous complaints and grievances, adverse actions she believed were made against her due to her disability, race and age." *Id.* at 6.  Quoting Supreme Court precedent at great length, Gartin contends that her allegations satisfy notice pleading standards, and that she is not required to prove her *prima facie* case in her Complaint.  *Id.* at 6–8 (extensively quoting *Swierkiewicz v. Sorema*, 534 U.S. 506, 511–513 (2002)).  She notes that her Complaint "specifically included her claims alleging a change in terms in conditions of her job, increased work load and job duties, previous complaints and grievances and other facts," which suffice to "to give her former employer notice of the basis of her claims." *Id.* at 10.

In reply, IU contends that Gartin fails to "address the notice defect" under which "her Complaint does not plead with enough detail or intelligibility for a court or an opposing party to understand whether a valid claim is alleged and if so what it is." (Filing No. 20 at 1.) For example, Gartin's claim that she was expected to meet "subjective" demands not only fails to explain how that request would violate any law, but also "does not explain whether she received 'subjective'

demands because of her race, her age, her alleged disability, or a combination of the three." *Id.* at 2. But this is not the only allegation shortcoming: "This structural defect runs through the Complaint," asserts IU.   *Id.*   Though Gartin baldly states that she faced discrimination and retaliation, "she makes no effort to connect that conclusory allegation to any alleged mistreatment." *Id.* And Gartin's allegation that "she was not given a cost of living increase in June 2018," by way of another example, fails to offer any "explanation as to whether she thinks this was motivated by racial discrimination, disability discrimination, age discrimination, or some combination of impermissible discriminations," let alone whether she believes she was even "legally entitled to a cost of living increase." *Id.*   In short, IU argues that it is not asking for Gartin to "*prove* her case"; instead, it contends that "she has not provided sufficient notice for the University to know what her claims are," so it cannot "prepare a defense," "understand the scope of what her claims might be," or determine "whether they would be valid." *Id.* at 2–3 (emphasis in original).   Indeed, Gartin "does not allege any connection between any animus and any particular alleged act." *Id.* at 5.   It is, for example, "impossible that she was treated worse than others based on impermissible factors" when she argues that, during the relevant time period, she "'was the only employee working on her team'".   *Id.* (quoting [Filing No. 1 at 5](#)).   Gartin's race discrimination claim is "particularly implausible," IU contends, when she, "[w]ith no explanation," purports that "the University became racist against her" after fourteen years of trouble-free employment. *Id.* at 5.

The Court finds that Gartin's Complaint adequately pleads a Title VII claim.   As the Seventh Circuit has noted, "the Supreme Court held in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 . . . (2002), that a conclusory complaint of employment discrimination is adequate." *Reynolds v. AAA Auto Club Enterprises*, 525 Fed. Appx. 488, 490 (7th Cir. 2013).   IU states that Gartin "has not even alleged" that she faced workplace adversity "'because of [her] race.'" ([Filing No. 20 at 5](#)

(quoting *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998)).) But her Complaint explicitly alleges that she "was subjected to discrimination and retaliation due to her . . . race (African American) . . . during employment as early as December 1, 2017." (Filing No. 1 at 4.) She continues that "[t]he [c]onduct of the Defendant, which is complained of herein[,] is in violation of. . . the Civil Rights Act of 1964, (Title VII) as amended". *Id*. at 7.  Though these statements may not "connect[ ] any impermissible motive to any alleged action" (Filing No. 20 at 3) to the extent that IU would like, the Seventh Circuit has affirmed that a discrimination claim survives a motion to dismiss if it simply identifies the type of discrimination suffered, the person allegedly responsible for the discrimination, and the time at which the discrimination occurred. *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010) (denying motion to dismiss because plaintiff's complaint identified the type of discrimination alleged (racial), by whom (Citibank's manager), and when (in connection with plaintiff's effort in early 2009 to obtain a home-equity loan)).  Here, Gartin alleges racial discrimination committed by IU (through Neal) starting in December 2017. This adequately pleads a discrimination claim under *Swierkiewicz*.

And IU's contention that Gartin "has pleaded herself out of Court by alleging that, during the relevant timeframe, she was the only employee working in" her department, making it "impossible that Gartin was treated worse based on her race or her age because there would be no other similarly situated employees against whom to compare her", (Filing No. 16 at 9), also fails. A plaintiff, for example, may still proceed under a "direct method of proof" of discrimination, even when she does *not* identify "any similarly-situated persons who were treated differently," by demonstrating "through direct or circumstantial evidence that the adverse action by the employer was motivated by an impermissible purpose." *Muhammad v. Caterpillar, Inc.*, 767 F.3d 694, 699 (7th Cir. 2014), *as amended on denial of reh'g* (Oct. 16, 2014).  This evidence may include "an

admission by the employer of an impermissible animus" or "circumstantial evidence that is strong enough, taken as a whole, to allow the trier of fact to draw the inference of such animus." *Id.* So, even if Gartin's Complaint lacks comparators, she has not "pleaded herself out of court" under Title VII.

For the preceding reasons, the Court **denies** IU's Motion to Dismiss as it relates to Gartin's Title VII claim.

## C.   <u>Injunctive Relief</u>

Finally, IU argues that Gartin lacks standing to pursue her requested prospective injunctive relief—that is, for the Court to (1) permanently enjoin IU from discriminating against employees and (2) compel IU to adopt correspondingly protective policies—when she does not "face a real and immediate threat of future injury" and fails to "demonstrate a personal stake in the outcome." ([Filing No. 16 at 10](#) (citing *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017); *City of Los Angeles v. Lyons*, 461 U.S. 95, 105–06 (1983))). In response, Gartin argues that injunctive relief is appropriate when courts can consider "the potential impact and harm to other parties and the public interest in general." ([Filing No. 18 at 12](#).) Moreover, "in individual actions, a Court may order injunctive relief and enjoin employment practices that are found to be unlawful under Title VII when the court finds the violation was intentional." *Id.* (citing 42 U.S.C. §2000e-5(g)). In reply, IU contends that Gartin's standing argument in support of injunctive relief misses the mark: "Her reliance on statutory law is misplaced; judicial standing is a matter of Article III of the United States Constitution's 'case or controversy' clause." ([Filing No. 20 at 6](#).) Moreover, "Gartin provides no argument for how she would be allowed to seek, for example, a "permanent injunction against

the University . . . from ever discriminating against anyone at any time in the future, or from ever violating any federal employment law at any time in the future." *Id.* (citing Filing No. 1 at 7).

The case that IU cites in support of the contention that "Gartin must face a real and immediate threat of future injury as opposed to a threat that is merely conjectural or hypothetical" involved a motorist seeking a preliminary injunction to stop officers from issuing tickets for violations of a Chicago ordinance that banned texting while driving. *Simic v. City of Chicago*, 851 F.3d 734, 736 (7th Cir. 2017). The Seventh Circuit ultimately held that a preliminary injunction was impermissible in that context because the plaintiff's "claimed threat of future injury" was "contingent upon her once again driving while using her cell phone and receiving a citation under the Chicago ordinance." *Id.* at 738. More relevantly, however, "courts are given wide discretion in Title VII cases to fashion a complete remedy, which may include injunctive relief." *U.S. E.E.O.C. v. Gurnee Inn Corp.*, 914 F.2d 815, 817 (7th Cir. 1990) (citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421 (1975)). Indeed, "Title VII vests federal courts with broad equitable power to fashion remedies to eliminate discriminatory effects of the past *as well as bar like discrimination in the future*." *Id.* (citing *Albemarle*, 422 U.S. at 421) (emphasis added). These remedies can include prohibiting an entity "from engaging in future discrimination" and ordering it "to adopt both a policy banning [discrimination] and a procedure to enforce that policy." *Id.* at 816–17. Gartin asks the Court to

(1)   enjoin IU from "engaging in discrimination based on disability, race or age and any other employment practice which violates federal employment law" and

(2)   order IU "to institute and carry out policies practices, and programs which protect employees from disability discrimination and provide equal employment opportunities for employees, regardless of disability, race or

age, or other protected classes, and which eradicate the effects of its past and present unlawful employment practices."

(Filing No. 1 at 7.) These requests track the injunctive relief contemplated by Title VII as recognized by the Seventh Circuit in *Gurnee Inn* over thirty years ago. Though Title VII provides that this relief is available only when "the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint," 42 U.S.C. § 2000e-5(g), this early stage of the litigation is not the time for that determination.

For the preceding reasons, the Court **denies** IU's Motion to Dismiss as it relates to Gartin's request for injunctive relief, insofar as it proceeds under her remaining Title VII claim.

## IV.   CONCLUSION

A motion to dismiss pursuant to Rule 12(b)(6) does not test whether the plaintiff will prevail on the merits but instead whether the claimant has properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). For the foregoing reasons, the Court **GRANTS in part and DENIES in part** IU's Motion to Dismiss (Filing No. 15). Gartin's ADA and ADEA claims are **dismissed with prejudice** since any amendment would prove futile.[2] Gartin's Title VII claim, however, may proceed, including her corresponding request for injunctive relief.

**SO ORDERED.**

Date:    1/15/2021

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

---

[2] "Unless it is *certain from the face of the complaint that any amendment would be futile* or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss." *Barry Aviation Inc. v. Land O'Lakes Municipal Airport Comm'n*, 377 F.3d 682, 687 & n. 3 (7th Cir. 2004) (emphasis added); *see also Hernandez v. Nieves*, 762 Fed. Appx. 325, 326 (7th Cir. 2019) (affirming when "district court [ ] dismissed [a] complaint for failure to state a claim . . . with prejudice because amendment would be futile).

DISTRIBUTION:

Michelle Smith Scott
msmithscott@aol.com

Vivek Randle Hadley
TAFT STETTINIUS & HOLLISTER LLP (Indianapolis)
vhadley@taftlaw.com

Erica Marie Knear
TAFT STETTINIUS & HOLLISTER LLP (Indianapolis)
eknear@taftlaw.com

Melissa A. Macchia
TAFT STETTINIUS & HOLLISTER LLP (Indianapolis)
mmacchia@taftlaw.com